CÁDIZ, PETITIONER AND APPELLEE, *v.* JIMÉNEZ, CONTESTANT AND APPELLANT.

APPEAL from the District Court of Humacao in Proceedings for the Approval of the Report of a Partitioner.

No. 2449.—Decided December 19, 1921.

COMMUNITY PROPERTY—LIFE INSURANCE.—A life-insurance policy issued to a married man for the benefit of his children is not community property.

ID.—ID.—HEIRS—BENEFICIARY.—Assuming, without so holding, that the word "children" can not be taken to include an acknowledged natural child for the purpose of considering such a child a beneficiary under an insurance policy issued to the father for the benefit "of his children," and the widow in this case not being an heir of her husband for the reason that he died intestate in 1908, it will be necessary to hold that the acknowledged natural child, the only designated heir, is the beneficiary to the amount of the policy.

The facts are stated in the opinion.

*Mr. F. González* for the appellant.

*Mr. M. Tous Soto* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

For a second time the distribution of the small estate left by Quintiliano Cádiz Mena is the object of an appeal. On July 10, 1919, this court reversed a certain order of the District Court of Humacao and remanded the case for further proceedings. *Cádiz* v. *Jiménez,* 27 P. R. R. 598. The district court referred the matter to a partitioner who, after hearing the interested parties and examining evidence, made his report, which reads in part as follows:

"*Death of the principal.*—Quintiliano Cádiz Mena, then a resident of Caguas, died there on July 2, 1908, while married to María Jiménez y García. There had been no issue of that marriage, but

Cádiz Mena left an acknowledged natural child named Carlos Manuel Cádiz Ríos.

"*Heirs of the deceased.* — Cádiz Mena died intestate, for which reason and considering the date of his death, his estate must be governed by the provisions of the Revised Civil Code regarding intestate inheritance, under which the present petitioner, Carlos Manuel Cádiz y Ríos, was designated by the District Court of Humacao as the sole and universal heir of the deceased Quintiliano Cádiz y Mena, without any usufructuary right vesting in the surviving spouse.

"*Matrimonial contributions.*—María Jiménez y García contributed no property of any kind to the conjugal partnership. Quintiliano Cádiz y Mena owned under different titles some real properties and an interest in a mercantile partnership at the time of his marriage, but it has not been shown that the proceeds of the sale of the real properties, which he made during wedlock, and the profits received from the said partnership were expended for the benefit of the conjugal partnership. On account of that lack of evidence and considering the jurisprudence of the Supreme Court in this case, the said contribution will not be taken into account in the liquidation of his estate.

"*Estate.*—At the time of his death Quintiliano Cádiz Mena was the owner of two urban properties in Aguas Buenas, hereinafter described, the value of which, by the common consent of the parties, has been fixed at one thousand dollars.

"From the date of the death of Cádiz Mena the said houses have been in the possession of his wife, María Jiménez y García, who on May 1, 1918, liquidated the rents, deducting what she had expended for repairs which the heir admitted were necessary, and in accordance with that liquidation she had in her possession the sum of $388.06.

"After the date of the liquidation María Jiménez y García continued in possession of the houses and leased them to Ramón Valcourt for a monthly rent of $14, with the obligation to make all necessary repairs at his expense, the said Valcourt having continued to hold the said lease up to this date, the validity of which lease is admitted by the petitioner, although he took no part in its execution. By virtue of that lease and the consequent payment of the rent, María Jiménez y García has in her possession the sum of $420.

"The ancestor had taken out a life insurance policy for the sum of $1,000, but its date, the company which issued it, the bene-

ficiary, and other facts connected with the policy are unknown; but in an agreement between the parties for the purposes of the partition the petitioner acknowledges that in order to keep up the said insurance the deceased paid the sum of $35.55 yearly for four years, making a total of $142.20.

"The partitioner admits that this sum of money should be collated by the petitioner only by virtue of the stipulation in connection with the partition, inasmuch as there is no evidence of the fact of such payment nor of its having been made from funds of the conjugal partnership, considering that the ancestor had private funds; nor is there any evidence about other particulars, which could not be communicated to him by the agents of the Sun Life Company of Canada by which it was said that the policy had been issued and which information was negative in all respects."

Under these circumstances an inventory was made which showed that the total value of the community property was $1,950.26, which was divided into two equal parts, one-half being allotted to the widow and the other half to the acknowledged natural child. The $1,000 from the policy had been delivered directly to the acknowledged natural child and was not collated because the partitioner understood that it belonged exclusively to the son who had been designated as the sole and universal heir of his father. Only the $142.20 paid for premiums on the insurance was collated as community property. The district court approved the report and the widow, María Jiménez, took the present appeal.

The appellant has raised several questions which are unimportant. The really fundamental question is whether or not the $1,000 from the insurance policy should be considered as community property.

In support of an affirmative opinion the appellant cites no applicable statute or jurisprudence, but only invokes the opinion of commentator Manresa, as follows:

"Should the sum paid by an insurance company upon the death of the insured be considered as community property? This question has been discussed in France from the standpoint of whether it

should be considered as personal property. It is clear that many of the arguments there adduced pro and con are of no weight in our country because of the great difference in the legal system governing the relations between husband and wife.

"Of course, the principal of the insurance substitutes the premiums that must be paid and the right to the former vests from the moment of the contract, since from that time the power to dispose of it exists, and if the insured dies, payment may be demanded. It is, therefore, an acquisition for a valuable consideration made during wedlock, although the time stipulated for performance of the obligation is when the death of one of the spouses occurs, which occurrence extinguishes the partnership. The question being considered in that light, it may be said to be settled by articles 1396 and 1401. If the premiums are paid with the separate funds of the husband or the wife, the principal of the insurance is his or her separate property, but if they are paid from the common funds, or the source of the money can not be established, the acquisition is community property." 9 Manresa, Spanish Civil Code, 2nd edition, 589.

This court has great respect for the opinion of the wise Spanish jurist and it must be admitted also that it is logical on the particular point discussed, but if the question is studied more deeply, it will be seen that the opinion is in conflict with articles 416 and 428 of the Code of Commerce, by which code life insurance, as a mercantile contract, is governed.

Article 428 expressly provides that the amounts which the insurer must deliver to the person insured, in fulfillment of the contract, shall be the property of the latter, even against the claims of the legitimate heirs or creditors of any kind whatsoever of the person who effected the insurance in favor of the former.

Who is the beneficiary in this case? The report does not say, but from the evidence examined it appears that the policy was issued "in favor of the children" of Quintiliano Cádiz Mena.

The appellant contends that the acknowledged natural child can not be considered as included in the word "chil-

dren." This case is not exactly similar to that of *Díaz* v. *Porto Rico Railway, Light and Power Company,* 21 P. R. R. 73, but assuming, without holding, that it is, then we would have before us a case in which it must necessarily be concluded that the amount of the policy belonged to the heirs of the deceased, and in this case the only heir of the deceased, according to the express adjudication of the court made in a proper proceeding, is the acknowledged natural child. Cádiz Mena died intestate on July 2, 1908. The widow, therefore, was not an heir. See the case of *Julbe* v. *Guzmán,* 16 P. R. R. 502.

The order appealed from is

*Affirmed.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.